OPINION OF THE COURT
Michael C. Eidens, J.
An application by the Daily Gazette Newspapers has been made to review transcripts of taped conversations between the defendant and two third parties. These transcripts were attached to a CPL 710.30 notice dated November 6, 1995 and served upon the defendant’s counsel and filed with the court by the Saratoga County District Attorney shortly after the defendant was arraigned.
On November 30, 1995, the defendant orally moved to seal the transcripts and deny public access to them. The court granted the application for a temporary order sealing the transcripts from public view pending notice to the Daily Gazette, oral argument and decision by the court. The defendant also moves, in the alternative, for an order by the court permitting the District Attorney to "unfile” the CPL 710.30 notice and the attached transcripts by having the court simply return the notice and the attachments to the District Attorney, thereby rendering moot the request by the defendant to seal the transcripts.
The District Attorney consents to the relief sought by the defendant to seal the transcripts, and/or in the alternative, seeks to withdraw the CPL 710.30 notice and attachments from the court’s file.
The Daily Gazette Newspapers sought access to all discovery materials filed with the court in connection with the above-captioned case, and in particular, access to transcripts of conversations between the defendant and third parties which were incorporated within the CPL 710.30 notice. No discovery materials have been filed with the court.
*805 Oral argument on the motion was held on the 13th of December 1995, and the court heard and considered argument by the defendant, the People, and counsel on behalf of the Daily Gazette. Decision was reserved.
BACKGROUND
On or about November 6, 1995, the People served a CPL 710.30 notice, with certain attachments which included transcripts of taped conversations between the defendant and third parties, on counsel for the defendant, and filed a copy of the notice and the attachments with the court. It has not been made clear why the CPL 710.30 notice and attachments were filed with the court, other than to keep the court informed of pretrial matters and to provide for meaningful conferences. The law does not require that the People file the notice or attachments with the court,[1] but it may be proper practice to provide notice to the court of compliance with CPL 710.30 (2).[2] Notice to the court of the People’s compliance with the notice provision does serve the useful purpose of reducing disputes concerning compliance with the time requirement. This may be accomplished by simply sending the court a copy of the enclosure letter, or as in the present case, by the People filing with the court the notice at the same time the defendant is served. Custom and practice in Saratoga County Court is that CPL 710.30 notices are routinely filed with the court.
In the present case, several weeks following the filing of the notice with the court, the Glens Falls Post-Star requested access to the CPL 710.30 notice and attachments that had been filed with the court. Since the documents had been filed with the court, and no opposition to public access or seal request had been made, the court permitted review, but not copying, of the notice and the attachments. Following the printing of an article in the Glens Falls Post-Star discussing certain quoted portions of the transcripts that were part of the CPL 710.30 notice, the defendant and the People expressed opposition to the court concerning press access to the filed documents. Shortly thereafter, the Daily Gazette sought similar access to *806 the notice and attachments, and the defendant immediately orally indicated objection. The defendant requested a temporary order denying press access pending oral argument of the motion to seal, and the court granted the temporary sealing order on November 30, 1995.
The defendant argues that the notice attachments should not have been filed with the court, and constitute unauthorized ex parte communication with the court. He argues that therefore what has occurred is a "mis-filing”, and that the notice attachments should be withdrawn by the District Attorney. Interestingly, the defendant also contends that the transcripts are exculpatory with respect to his client. He states that harm to his client has occurred by reason of the incorrect characterizations and misinterpretations placed upon the transcript contents by the reporter from the Glens Falls Post-Star that had access to the transcripts. Defense counsel took strong issue to the inaccurate "slant” given to the tape contents by the reporter.
The defendant does not contend that he was unaware that the notice and attachments were filed with the court by the District Attorney prior to access by the Glens Falls Post-Star reporter.
The District Attorney argues that it was never the intent of his office that the contents of the CPL 710.30 notice be made available to the public, and that had he realized that such would or could be the case, he would not have filed the notice with the court. He agrees with the position of defense counsel that if the defendant filed a motion to suppress the notice contents, and attached or included the notice to his motion papers, the contents of the notice then would be presumptively open to public access. The District Attorney also requests withdrawal of the notice and contents from the court’s file, but offers no authority to support his request for such "unfiling”.
ANALYSIS
Mootness or Waiver
The issue of access by the press is not moot on the basis that the material has already been reviewed by one reporter, as suggested by the Gazette. Nor are the tape transcripts in the public domain because one reporter reviewed them, also as argued by the Gazette. The court in In re Baltimore Sun Co. v Goetz (886 F2d 60 [4th Cir]) faced a mootness issue, and observed that "We cannot accept the government’s contention that, because the affidavit has been released to the public, this *807 appeal should be dismissed as moot. This case falls within the exception to the mootness rule which permits judicial review when the dispute is 'capable of repetition, yet evading review’ * * * This exception applies if * * * there is a reasonable expectation that the [newspaper] will be subject * * * [to another sealing order denying it access] to the same action again.” (In re Baltimore Sun Co. v Goetz, supra, at 63.)
The logic in In re Baltimore Sun Co. v Goetz (supra) is applicable here because the repetition anticipated by the court has in fact occurred here. Moreover, the repetition is within the same case, and concerns the same documents. Access is sought now by a representative from the press who was not part of the initial request for review. At that time, the papers had already been filed without an accompanying request for a seal order, and no sealing request or order had been made subsequent to the filing. Now we have a request for access by the Daily Gazette, a temporary seal order, and objection by the defendant and the District Attorney. The argument may be made, although it was not raised at oral argument, whether the defendant and/or the District Attorney have waived their objection to access by the press by failure to seek a sealing order in the first instance. This argument is without merit. The fact that the material had already been reviewed by a reporter is not controlling (see, In re Herald Co., 734 F2d 93 [2d Cir]).
If, as suggested by the Gazette, press review now is mandated because "The Cat is out of the bag”[3] and the material has already been released, then the Gazette should be satisfied to simply obtain the material from the Post-Star account. The Gazette obviously should not be, and would not be, satisfied with that remedy. The Gazette cites Matter of Associated Press v Bell (70 NY2d 32) in support of its position that the material sought is already in the public domain. That case involved a partial disclosure by the defendant, and the disclosure was only discussed as it related to the difficulty finding that publicity would jeopardize the defendant’s right to a fair trial (Matter of Associated Press v Bell, supra, at 39) and it is not controlling on the mootness or waiver issue.
The Gazette argues that any harm to the defendant has already occurred by the initial release, and there would be no additional harm to the defendant and the District Attorney if access is again permitted. This argument is disingenuous. It would be futile to attempt to convince any subject of adverse *808 publicity that two critical news media accounts do no more damage to his reputation or standing in the community than one critical account. The obvious and inescapable conclusion is that review of the CPL 710.30 notice transcripts filed with the court, by a reporter from one newspaper, prior to a seal order and prior to objections and a request for a seal order, is not the equivalent of a later review by a different media representative.[4]
First Amendment Right of Access
CPL 710.30 requires the District Attorney to serve upon the defendant a notice of intention to offer at trial certain evidence regarding statements made by the defendant. The District Attorney is not required to file this document with the court. The documents in question were not submitted in connection with a contested motion, and therefore the qualified First Amendment right of access does not apply.[5]
Judicial Documents
. [3] The leading public access cases in New York have not explicitly held whether the common-law presumption of public access applies to all documents filed with the court. However, the recent New York cases analyzing the issues this court faces have applied the common-law presumption to documents filed in court without suggesting that there are distinctions which need be made concerning whether a document is, or is not, a court (or judicial) record. The State of New York law seems to be that if the documents were filed in court, they would be subject to access by the media in the first instance.[6]
*809 For purposes of analysis, and assuming that New York may refer to Federal decisional law on this issue, it is helpful to briefly review the Federal law on this topic.
The Second Circuit recently held that not all documents filed in court are "judicial documents” and thereby presumptively subject to access by the media. (United States v Amodeo, 44 F3d 141 [2d Cir 1995].) The Amodeo court analyzed the factors and basis by which papers filed in court become, or are considered to be, "judicial documents”, thereby subject to the common-law presumption of public access.
In Amodeo, a court officer was appointed by the court pursuant to a consent decree to investigate corruption in a labor union and to administer the affairs of the labor union. She periodically filed reports with the Federal District Court. She did so voluntarily, and because she thought it was advisable to keep the court informed about the progress she was making. She was not required to file the reports by statute, rule or court order. In her reports, she included information she considered to be confidential in an addendum to the publicly filed reports. The public reports refer to the confidential reports, which are delivered directly to chambers with a request that they be placed under seal. The court complied with the request to seal the addenda. In response to Newsday’s request for access to the sealed report, and upon the motion for access, the court officer contended (as did the District Attorney in the present case) that "she never intended that the public have access to the confidential status reports and that, had she known that the reports would be accessible to the public, she would not have filed them at all”. (United States v Amodeo, supra, at 144.)
The District Court determined that the report and addendum had been filed in a judicial proceeding and therefore were "judicial documents” and, as such, the common-law right of access attached. The Second Circuit noted that the Federal circuits are not in agreement as to the criteria to determine whether a document will be classified as a "judicial document”. The court pointed out that the rule in the Third Circuit is that if a document is filed in the court, it is then a judicial document presumptively available for review. The court in Amodeo declined to follow this mechanical approach, and instead held that "the mere filing of a paper or document with the court is *810 insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document” (United States v Amodeo,, supra, at 145).
This court must therefore determine whether the CPL 710.30 notice and attachments are relevant to the performance of the judicial function and useful in the judicial process. The Amodeo court took a very broad view of the meaning of "relevant-to the * * * judicial function” and "useful in the judicial process”, and classified the voluntary reports and exhibits filed by the court officer to be judicial documents. The factors cited by the Circuit Court of Appeals in making this determination all pertained to potential judicial functions for which the filed reports had the potential to be useful. For instance, the court observed that the filed reports could be helpful if the court desired to consider discharge or retention of a receiver,[7] and the court could refer to the filed reports if it became necessary to evaluate whether the officer was performing her duties. Furthermore, if the officer applied for additional powers, the filed reports could prove useful in providing information to the court. Clearly, based on this broad analysis and approach, where the Amodeo documents were deemed judicial because they might prove informative and helpful to the court in the future, the filed CPL 710.30 notice and attachments are relevant to the performance of the judicial function and useful in the judicial process. The Amodeo court did not place undue significance on the fact that the reports were not required to be filed,[8] and nor should this court in the analysis at hand. The notice and attachments give notice of statements that the People intend to use at trial so that the defendant may consider seeking a pretrial ruling regarding the admissibility of those statements.
In the recent Third Department case People v Burton (189 AD2d 532 [3d Dept], supra), the Court implicitly held that discovery materials, when filed with the court, were judicial *811 documents subject to public access.[9] It is noted that the CPL does not ordinarily require the filing of discovery materials with the court.
Based upon the foregoing analysis, the court finds that the notice and attachments are judicial documents, and therefore subject to the common-law presumption of public access.
Common-Law Right of Access
Application of the common-law right of access doctrine to the present situation calls for the court to conduct a balancing of the competing interests to determine if access should be granted or denied (Nixon v Warner Communications, 435 US 589, 602), and the presumption favors access to judicial records (Nixon v Warner Communications, supra). The ultimate decision is one left to the sound discretion of the trial court (Nixon v Warner Communications, supra; United States v Amodeo, supra).
The arguments advanced for sealing and nonaccess by the defendant at oral argument did not adequately support a claim that the defendant could be unduly prejudiced by press access to the documents. The defendant’s argument that the transcripts should be sealed pending the determination of a suppression motion is also without merit, for even if they had not yet been filed with the court, the transcripts would be subject to the qualified First Amendment right of access when placed into evidence at the hearing (People v Burton, supra). Even if the tapes were obtained in violation of the defendant’s constitutional and/or statutory rights, there has been no showing whatsoever that would support the position that defendant’s right to a fair trial may be jeopardized (cf., Matter of Associated Press v Bell, 70 NY2d 32, supra).
Some factors which have caused courts to deny common-law access in the past have been the protection of trade secrets, the privacy and reputation of crime victims, national security interests, protection of confidential sources, protection of witnesses and ongoing criminal investigations, and to minimize the danger of an unfair trial by reason of adverse publicity (see, United States v Cojab, 996 F2d 1404 [2d Cir]). The defen *812 dont is a public official, and the case has generated widespread media coverage, but this, in itself, does not support denying press access (Matter of Associated Press v Bell, supra).
At this juncture, it is relevant to point out that defense counsel stated at oral argument that the tape contents are exculpatory as to his client. This contention undermines the defense position that press access to the transcripts may jeopardize his right to a fair trial. If his position is that access could impair his fair trial rights because the press may report inaccurately after review of the transcripts, then his dispute is with the press concerning fair and accurate reporting, and does not implicate access issues.
Return of the Notice and Attachments
Although the People seek to withdraw the notice and the attachments from the court file, and the defendant joined in the oral motion and consents to such removal, neither party has offered any authority to the court to support the granting of that relief. Clearly, the unfiling is for no purpose other than to defeat press access to the tape transcripts. This court has searched for authority to permit such unfiling, and finds none. If such unfiling were permitted, then every nonmandatory filing of a judicial document could escape press access by a timely and convenient removal of the document from the court file. Since the document is filed with the court, it is incumbent upon the District Attorney or the defendant to demonstrate why it should no longer be in the court file. There has been no such showing.
The District Attorney’s request to withdraw the notice and attachments from the court file is denied.
Therefore it is ordered, that the District Attorney’s request to permit the unfiling of the CPL 710.30 notice and attachments is hereby denied; and it is further ordered, that the temporary sealing order granted by this court is vacated; and it is further ordered, that the Daily Gazette’s request for access to the CPL 710.30 notice and attached transcripts is hereby granted to the extent that the Gazette reporter may review, but not photocopy, the material set forth herein.

. CPL 710.30 (1) states: "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant * * * they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered” (emphasis added).

. CPL 710.30 (2) states: "Such notice must be served within fifteen days after arraignment * * * upon such service the defendant must be accorded reasonable opportunity to move before trial * * * to suppress the specified evidence.”

. Oral argument by counsel for the Daily Gazette on December 13, 1995.

. See also, Matter of Newsday, Inc. v Sise (71 NY2d 146) regarding media access to names and addresses of jurors: "Moreover, that some of the information sought may have been orally revealed during the jury selection process, cannot alter the effect of Judiciary Law § 509 (a) in categorically prohibiting the public disclosure of any records containing information obtained from the juror questionnaires.” (Matter of Newsday, Inc. v Sise, supra, at 153.)

. "To the extent that the documents were submitted in connection with contested motions, the hearing of which were or would be accessible to the news media and the public, a qualified First Amendment right of access to them would also apply” (People v Burton, 189 AD2d 532, 535; see, United States v Haller, 837 F2d 84, 87; Matter of New York Times Co., 828 F2d 110, 114, cert denied sub nom. Esposito v New York Times Co., 485 US 977).

. "In addition, petitioner has no common-law right of access where records, such as these, have not been entered into evidence or filed in court and are, therefore, not public judicial records” (Matter of Newsday, Inc. v Sise, *809 supra, at 153, n 4 [emphasis added]; see also, People v Burton, 189 AD2d 532, 535, supra ["There is a common-law presumption in favor of public access to court records” (emphasis added)]).

. The court officer is vested with the powers of a receiver (United States v Amodeo, supra, at 146).

. The Fourth Circuit Court of Appeals held that because the Federal Rules of Criminal Procedure required affidavits in support of search warrants to be filed with the court, they were judicial records. (In re Baltimore Sun Co. v Goetz, 886 F2d 60, supra.)

. The Burton Court stated (at 535) that "there may be other documents (e.g., discovery materials) that, at least arguably, are only subject to the common-law right of access to court records”. Here the Court was distinguishing between the qualified First Amendment right of access, which requires a stronger showing to overcome, and the common-law right of access, which is a discretionary balancing test.